**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO: 1:15-CR-381 |
| Plaintiff, | : | |
| | : | JUDGE DONALD C. NUGENT |
| -vs- | : | |
| | : | |
| MATTHEW J. KING, | : | **DEFENDANT MATTHEW KING'S** |
| | : | **MOTION FOR JUDGMENT OF** |
| Defendant. | : | **ACQUITTAL OR NEW TRIAL** |
| | : | |

Now comes Defendant Matthew King, by and through undersigned counsel, and respectfully moves this Court for a judgment of acquittal pursuant to Fed. R. Crim. P. 29. The government has failed to prove, even in a light most favorable to the government, that Mr. King attempted or committed a financial transaction with the intent to conceal and disguise the nature, location, source, ownership, or control of property represented to be the proceeds of unlawful drug trafficking. Alternatively, Mr. King moves this Court for a new trial based on violations of his Sixth Amendment right to a fair trial and to confront witnesses against him. A memorandum in support of this motion is attached and incorporated herein.

                                                                                                 Respectfully submitted,
                                                                                                 */s/ Catherine Adinaro*
                                                                                                 CATHERINE ADINARO (0088731)
                                                                                                 Attorney at law
                                                                                                 TIMOTHY C. IVEY (0039246)
                                                                                                 Assistant Federal Public Defender
                                                                                               1660 West Second Street, Suite 750
                                                                                               Cleveland, Ohio 44113
                                                                                               (216) 522-4856 Fax: (216) 522-4321
                                                                                               e-mail address: timothy_ivey@fd.org
                                                                                               e-mail address:  cathi_adinaro@fd.org

**MEMORANDUM IN SUPPORT**

I.   **Introduction**

Mr. King was charged with three counts of money laundering in violation of 18 U.S.C. § 1956(a)(3)(B). This provision of the money laundering statute, known as the "sting provision," requires the government to prove Mr. King acted "with the intent[ ] to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity" and he "conducted or attempted to conduct a financial transaction" involving that property. 18 U.S.C. § 1956(a)(3)(B).

Count 1 charged Mr. King with attempted money laundering and was based on his acceptance of $20,000 in U.S. currency from M.T., a confidential informant. Count 2 charged Mr. King with money laundering based on a check written to M.A.T. & Associates. This check was never negotiated. Count 3 alleged Mr. King laundered a portion of the $20,000 through a check written to M.T.

A jury trial commenced on June 13, 2016. The government presented five witnesses: four law enforcement officers and a records custodian from U.S. Bank. At the close of the government's case in chief, Mr. King moved for acquittal pursuant to Fed. R. Crim. P. 29. (Dkt. 52, Tr. Vol. III, PageID 684-689). The Court denied his motion. Mr. King testified in his defense, and, after the admission of his exhibits, he rested his case. Mr. King renewed his Rule 29 motion, which was denied. (Dkt. 53, Tr. Vol. IV, PageID 857). On June 16, 2016, the jury returned verdicts of guilty on all three counts. Pursuant to Fed. R. Crim. P. 29(c), Mr. King now moves for a judgment of acquittal on all counts. In the alternative, Mr. King moves for a new trial under Fed. R. Crim. P. 33.[1]

---

[1] While post-trial motions under Rules 29(c) and 33(b)(2) are required to be filed within 14 days of the verdict, this Court extended Mr. King's time to file until July 22, 2016. (Dkt. 49).

## II. Motion for Judgement of Acquittal

### a. The Law

In reviewing a motion for acquittal by the defendant, a court reviews the record in the light most favorable to the prosecution, and shall grant relief only if it finds that no rational trier of fact could have found proof of guilt beyond a reasonable doubt that the defendant committed the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). In reviewing a motion for acquittal under Criminal Rule 29, a court does not weigh the credibility of the government's witnesses. *United States v. Abdullah*, 162 F.3d 897, 902-903 (6th Cir. 1998). Even giving complete deference to the testimony of all the government's witnesses, no rational fact-finder could find proof beyond a reasonable doubt that Mr. King is guilty of money laundering. Mr. King will address each count separately.

### 1. Count 1 – Acceptance of $20,000

In Count 1, Mr. King was charged with attempted money laundering based on his acceptance of $20,000 in U.S. currency from M.T. To be convicted of attempted money laundering, the government must prove Mr. King intended to commit the crime of money laundering and did some overt act that was a substantial step towards committing the crime of money laundering. A substantial step is more than mere preparation and must strongly confirm that he intended to launder money.

The government asserts Mr. King "took the ultimate step in accepting the $20,000 that was certainly a substantial step sufficient to constitute attempted money laundering." Additionally, the government contends Mr. King's acts of completing the corporate paperwork and discussing how the money would be laundered also support the notion that his taking the

money was a substantial step. (Dkt. 52, Tr. Vol. III, PageID 685-686). This, however, ignores the government's own evidence that Mr. King gave the money back to M.T.

It is undisputed that Mr. King accepted the money from M.T. However, the government's own evidence shows Mr. King gave the money back. Detective David Carney testified that M.T., the confidential informant, "went bad." (Dkt. 50, Tr. Vol. I, PageID 426). According to Detective Carney, after M.T. delivered the money to Mr. King, M.T. went back "unbeknownst" to law enforcement at the time and received money back. In fact, law enforcement later learned that M.T. had gone back "almost constantly" asking for money back. (Dkt. 50, Tr. Vol. I, PageID 426; Dkt. 51, Tr. Vol. II, PageID 482). The government's own witnesses testified that M.T. and Mr. King were having many conversations that were not monitored by the task force and that Mr. King returned money to M.T. (Dkt. 51, Tr. Vol. II, PageID 499-501). The evidence clearly shows that law enforcement lost track of the $20,000. (Dkt. 52, Tr. Vol. III, PageID 610).

Mr. King's acceptance of the cash cannot amount to a substantial step when all of the evidence reflects he gave the money right back. Moreover, whether Mr. King prepared corporate paperwork, had M.T. sign that paperwork, or discussed how he was going to launder money, the fact remains: Mr. King did not have the money to launder. Therefore, the acts of completing corporate paperwork (which was never filed) and talking (which is not an overt act) about methods of laundering money (which were never done) cannot support a finding that acceptance of the cash was a substantial step.

Because Mr. King's acceptance of the $20,000 was not a substantial step, he requests this Court enter a judgment of acquittal on Count 1.

### 2. Count 2 – MAT & Associates Check

Count 2 is not charged as an attempt. The government alleges, and the jury was so instructed, that Mr. King is guilty of conducting a financial transaction involving property that was represented to be proceeds from drug trafficking. (Jury Instructions; Indictment).

Detective Carney and Task Force Officer Ryan Allen testified the M.A.T. check could not have been negotiated because the corporation was never established with the state. (Dkt. 51, Tr. Vol. II, PageID 494-495, 511; Dkt. 52, Tr. Vol. III, PageID 599-600). Moreover, the government concedes this check was never negotiated. Instead, the government contends "the mere act of writing the check [to M.A.T. & Associates] in and of itself constitutes an act of money laundering." (Dkt. 52, Tr. Vol. III, PageID 686). This is legally incorrect.

To support a conviction for money laundering, Mr. King was required to conduct a financial transaction. The jury was properly instructed that a "financial transaction" means:

1. A transaction which in any way or degree affects interstate or foreign commerce involving the movement of funds by wire or other means, or

2. A transaction which in any way or degree affects interstate of foreign commerce involving one or more monetary instruments, or

3. A transaction in any way or degree affects interstate or foreign commerce involving the transfer of title to any real property, vehicle, vessel, or aircraft, or

4. A transaction involving the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce in any way or degree.

(Jury Instructions; 18 U.S.C. § 1956(c)(4)).

The M.A.T. check was never negotiated and therefore did not involve the movement of funds by wire or other means. Therefore, section 1 above does not apply.

As to section 2, Mr. King acknowledges a personal check is a monetary instrument, but disputes that this check satisfies the element of a transaction affecting interstate commerce. The

check made payable to M.A.T. & Associates had no effect, in any way, on interstate commerce because it could not be cashed. Because M.A.T. & Associates, the payee, did not exist, the check had no more effect on interstate commerce than did all of Mr. King's blank personal checks for that same account. A check which cannot be negotiated does not satisfy the element of involving interstate or foreign commerce. Therefore, section 2 above does not apply.

The government has presented no evidence that a transfer of title to any real property was involved. Therefore, section 3 does not apply.

Lastly, section 4 does not apply because writing a check that can never be cashed does not involve the "use" of a financial institution. The term "use" is not defined by statute so we use the word's common understanding. Use is defined as "the act of using something" or "to put into action or service." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 20 July 2016.

The M.A.T. & Associates check did not "use" a financial institution. Detective Carney testified that he recalled Special Agent Charles Smith taking M.T. to the bank to try to cash the check made out to M.A.T. & Associates, but the check was unable to be negotiated. (Dkt. 51, Tr. Vol. II, PageID 494). Detective Carney also testified that the M.A.T. & Associates check could not be negotiated in the form it was written because the corporation did not exist. (Dkt. 51, Tr. Vol. II, PageID 494-495, 511). Officer Allen acknowledged the check made out to M.A.T. & Associates was problematic because it could not be negotiated. (Dkt. 52, Tr. Vol. III, PageID 599). No financial institution was used. Therefore, section 4 above does not apply.

In sum, the jury's verdict of guilty on Count 2 cannot stand. There is no evidence Mr. King's writing of a check payable to M.A.T. & Associates, a non-existent corporation, meets the element of a financial transaction within the meaning of the statute. For this reason, Mr. King requests this Court enter a judgment of acquittal on this count.

### 3. Count 3 – M.T. Check

Count 3 relates to the $2,000 check Mr. King wrote to M.T. and was cashed at a local U.S. Bank. The government argues, again, that "the mere act of writing a check is in and of itself money laundering." (Dkt. 52, Tr. Vol. III, PageID 686). For the reasons stated above, this statement is incorrect. However, as to this count, Mr. King does acknowledge the element of a "financial transaction" has been met. What is missing is any evidence whatsoever that this $2,000 was in any way related to the $20,000 given to Mr. King by M.T.

The government asserts that there does not need to be evidence that any portion of the $20,000 was deposited into one of Mr. King's bank account. While this is true, the government does have to prove that Mr. King did not return all of the money to M.T. prior to writing the check. Officer Allen testified correctly that if all the money had been given back, there was no money left to be laundered and the check written to M.T. could not have been money laundering. (Dkt. 52, Tr. Vol. III, PageID 606).

The government's witnesses readily admit M.T. "went bad" and was communicating with Mr. King "constantly" to get cash back. (Dkt. 50, Tr. Vol. I, PageID 426; Dkt. 51, Tr. Vol. II, PageID 482). No witness offered by the government could testify as to what happed to the $20,000. In fact, Officer Allen testified that law enforcement had no idea what happened to the $20,000. (Dkt. 52, Tr. Vol. III, PageID 610). The only two people who know what happened to that money are Mr. King and M.T. Mr. King testified that he had given all of the money back prior to writing the check to M.T. (Dkt. 52, Tr. Vol. III, PageID 732-733). M.T. was never called as a witness. Because the government offered no evidence that Mr. King still possessed any of

the $20,000 at the time he wrote the check, Mr. King's conviction for money laundering cannot stand.[2]

Similarly, the government offered no evidence that Mr. King wrote the check to M.T. with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity. *See United States v. Monea*, 376 F. App'x 531, 539 (6th Cir. 2010). A conviction under 18 U.S.C. § 1956(a)(3)(B) requires proof that Mr. King himself had the intent to conceal or disguise the money. *Id*. Evidence of a defendant's intent to conceal or disguise includes:

> statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; using third parties to conceal the real owner; a series of unusual financial moves cumulating in the transaction; or expert testimony on practices of criminals.

*United States v. Marshall*, 248 F.3d 525, 539 (6th Cir. 2001).

The government offered no evidence whatsoever regarding Mr. King's intent to issue this check to conceal or disguise the purported drug proceeds. There was much discussion about how Mr. King said he planned to launder the money: run the money through a sham corporation or deposit the money into his IOLTA account and issue fake billings from that account. It is undisputed that neither of these was ever done. A review of the transcripts reflects that the government offered no evidence that would allow a reasonable fact finder to conclude Mr. King

---

[2] To the extent the government will cite to testimony of officers indicating that Mr. King told them he paid all of the money back except $2,300, the law is well settled that "a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused." *United States v. Marshall*, 863 F.2d 1285, 1287 (6th Cir. 1988) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488-89 (1963)). In cases where there is no clear proof that a criminal act took place, "courts have required independent evidence corroborating defendant's statements." *Marshall*, 863 F.2d at 1287. Because the government offered no independent evidence to assure the "reliability and truthfulness" of Mr. King's alleged statement, it cannot form the basis for his conviction. *Marshall*, 863 F.2d at 1287.

issued this check with the intent to conceal or disguise money represented to be unlawful drug proceeds.

Because the government offered no evidence Mr. King wrote the check to M.T. with the intent to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity, Mr. King requests this Court enter a judgment of acquittal on Count 2.

### III. Motion for New Trial

Fed. R. Crim. P. 33 permits a court to vacate a judgment and grant a new trial "if the interest of justice so requires." While the rule does not define "interest of justice," "[i]t is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). A violation of a defendant's constitutional rights "clearly meets this standard." *See Munoz* at 373. *Accord United States v. Bass*, 460 F.3d 830, 838 (6th Cir. 2006) (ineffective assistance of counsel supports motion for new trial).

Mr. King requests this Court vacate his conviction and order a new trial based on a violation of his right to confront witnesses against him. For the following reasons, the government's failure to call M.T. as a witness was a violation of Mr. King's Sixth Amendment right to a fair trial and to confront witnesses against him.

Detective Carney testified that M.T. approached the local task force and offered information on a member of a Mexican drug cartel. (Dkt. 50, Tr. Vol. I, PageID 427). Detective Carney "looked into [M.T.'s] background" and found that he had been a confidential source for another federal agency. (Dkt. 50, Tr. Vol. I, PageID 427). According to Detective Carney, M.T. was put into the Witness Protection Program based on his work as a confidential informant, but

was later kicked out of the program because "he was not following the rules." (Dkt. 50, Tr. Vol. I, PageID 427). He eventually changed his name to M.T. (Dkt. 50, Tr. Vol. I, PageID 427). In the process of being transported back to Cleveland, M.T. met a member of the Sinaloa Cartel. M.T. offered information related to that individual and the local task force began to use M.T. as an informant. (Dkt. 50, Tr. Vol. I, PageID 427). None of this information was disclosed to Mr. King or his defense counsel.

In late January or early February of 2014, M.T. told the task force that "he knew of an attorney by the name of Matt King, who was laundering drug money." (Dkt. 50, Tr. Vol. I, PageID 430). The task force decided to "set up a meeting" between M.T. and Mr. King "to see if this was correct." (Dkt. 50, Tr. Vol. I, PageID 430). Detective Carney testified that he set up the meeting "to corroborate" M.T.'s statement to the task force. (Dkt. 50, Tr. Vol. I, PageID 431). Before "sending [M.T.] in to meet with Matt King," Detective Carney had a "discussion about what to say and what he could not do." (Dkt. 50, Tr. Vol. I, PageID 431). The instructions included M.T. needing to "explain that he had money to be laundered, that he had to hide, which belonged – which was drug proceeds." (Dkt. 50, Tr. Vol. I, PageID 431).

M.T.'s statements to Mr. King regarding the source of the money to be laundered are the only evidence available to prove the money was represented to be proceeds of a specified unlawful activity – an element of the offense. *See United States v. Leslie*, 103 F.3d 1093, 1103-1104 (11th Cir. 1997) (requires proof that defendant believed money to be drug proceeds); 18 U.S.C. § 1956(a)(3)(B) (the government must prove the property was **represented to be** the proceeds of specified unlawful activity). The government cannot prove this element without the statements of M.T.

10

Detective Carney testified that in one of the recordings, M.T. can be heard saying he has his "last two keys of coke" to sell. (Dkt. 50, Tr. Vol. I, PageID 453). According to Detective Carney, in 2014, a kilogram of cocaine was selling for approximately $38,000 to $42,000. (Dkt. 50, Tr. Vol. I, PageID 454). Therefore, in Detective Carney's opinion, it would seem plausible for a drug dealer to make a $20,000 to $30,000 profit on two kilos of cocaine. (Dkt. 50, Tr. Vol. I, PageID 454). Again, these statements made by M.T. go to prove the element that the money was represented to Mr. King to be from drug proceeds.

Moreover, Detective Carney, Officer Allen, and Sergeant Todd Clark all testified that there were many conversations between M.T. and Mr. King of which law enforcement was unaware. According to Detective Carney, M.T. had "constantly" gone back to Mr. King to ask for cash back. These meetings were not authorized by law enforcement. (Dkt. 50, Tr. Vol. I, PageID 426; Dkt. 51, Tr. Vol. II, PageID 482). Because these meetings were not monitored, law enforcement has no idea what M.T. said to Mr. King during those meetings. (Dkt. 51, Tr. Vol. II, PageID 483). Officer Allen acknowledged that all of the unmonitored conversations, where Mr. King had been giving M.T. money back, were not reflected in the audio recordings played to the jury. (Dkt. 52, Tr. Vol. III, PageID 606).

To support the conviction for money laundering related to the two checks, the government must prove that Mr. King had not already given all of the cash back to M.T. The only way to do that is through M.T. The government's failure to call M.T. as a witness was a violation of Mr. King's right to a fair trial and his right to cross examine witnesses against him. For all of the reasons stated above, Mr. King requests this Court vacate his judgment and order a new trial.

**IV.     Conclusion**

For all of the foregoing reasons, Mr. King requests this Court issue for a judgment of acquittal on all three counts. In the alternative, Mr. King requests this Court vacate his judgment and order a new trial in the interest of justice.

>                    Respectfully submitted,
>
>                    */s/ Catherine Adinaro*
>                    CATHERINE ADINARO (0088731)
>                    Attorney at law
>                    TIMOTHY C. IVEY (0039246)
>                    Assistant Federal Public Defender
>                    1660 West Second Street, Suite 750
>                    Cleveland, Ohio 44113
>                    (216) 522-4856 Fax: (216) 522-4321
>                    e-mail address: timothy_ivey@fd.org
>                    e-mail address:  cathi_adinaro@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

*/s/ Catherine Adinaro*
CATHERINE ADINARO (0088731)
Attorney at law