IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15-CR-381 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW J. KING, | ) | GOVERNMENT'S RESPONSE IN |
| | ) | OPPOSITION TO DEFENDANT'S |
| Defendant. | ) | MOTION FOR JUDGMENT OF |
| | ) | ACQUITTAL OR NEW TRIAL |

Now comes the United States of America, by and through counsel, Carole S. Rendon, United States Attorney, and Margaret A. Sweeney and Michelle M. Baeppler, Assistant United States Attorneys, and hereby responds in opposition to Defendant's Motion for Judgment of Acquittal or New Trial.

**I.     Factual Background**

The government's undisputed evidence at trial showed that on February 10, 2014, Defendant Matthew King accepted $20,000 of money that he believed was drug money, which he stated he would launder. (Gov't Exhibit 3, Recording of February 10, 2014, Meeting). On February 18, 2014, Defendant wrote Marcus Terry a check for $2,000 written to M.A.T. & Associates. (Gov't Exhibit 4, Recording of February 18, 2014, Meeting). On March 4, 2014, Defendant wrote a separate $2,000 check to Marcus Terry, gave it to Terry and said, "It's your

money and my money . . . . I comingled the funds." (Gov't Exhibit 5, Recording of March 4, 2014, Meeting).

On October 14, 2015, a federal grand jury indicted Defendant for money laundering and attempted money laundering. On June 13, 2016, a jury trial began, and following five government witnesses and Defendant's testimony, the jury found Defendnt guilty of all counts in the indictment.

Defendant now moves this Court under Federal Rules of Criminal Procedure 29 and 33 for a judgment of acquittal or a new trial.

## II.     Law and Argument

This Court should deny Defendant's Motion because viewing the evidence in the light most favorable to the government, there was sufficient evidence for the jury to find Defendant guilty of each count of the indictment, and there was no violation of King's rights such that the interest of justice necessitates a new trial.

Defendant has moved this Court under Rule 29 for a judgment of acquittal claiming that the evidence was insufficient to sustain a conviction. The ultimate question in considering a Rule 29 motion is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014). "The Court must construe the evidence in the light most favorable to the government, and then determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Clay*, 667 F.3d 689, 693 (6th Cir. 2012). Defendant bears the burden on a motion under Rule 29, and as the Sixth Circuit has described, it is a "heavy burden." *Rogers*, 769 F.3d at 377. Defendant has failed to meet his burden.

Defendant claims that the government evidence was insufficient to support the jury's guilty verdicts on each of the three counts of the indictment. First, Defendant challenges Count 1 claiming that evidence showing Defendant accepting $20,000 of drug money did not constitute proof a substantial step in furtherance of money laundering. As this Court instructed the jury, attempted money laundering, as charged in Count 1, requires that the jury find evidence that (1) the defendant intended to commit the crime of money laundering; and (2) the defendant did some overt act that was a substantial step towards committing the crime of money laundering. A substantial step "consists of objective acts that mark the defendant's conduct as criminal in nature . . . When taken as a whole, the acts must unequivocally corroborate the required subjective intent to [commit the crime]." *United States v. Castanon-Campos*, 519 F. App'x 403, 407 (6th Cir. 2014) (internal quotations and alterations omitted)).

Here, the government produced significant evidence that Defendant took a substantial step in furtherance of money laundering. The government presented video recordings of Defendant physically accepting $20,000 of purported drug money, while explaining how he was going to launder it. (Gov't Exhibit 3). The government also produced additional videos and recordings that prior to this meeting where Defendant accepted the $20,000 to launder, Defendant agreed to launder Marcus Terry's money, outlined a plan with various options as to how he could launder the money, and met with Marcus on at least seven occasions where they discussed the money laundering plan. Viewed in the light most favorable to the government, these objective acts—meeting with Terry and accepting the $20,000, all the while stating that he intended to launder the money—"unequivocally corroborate" his intent to launder the money. *Castanon-Campos*, 519 F. App'x at 407. To the extent that Defendant argues that his statements cannot constitute a substantial step, the Sixth Circuit has ruled that "a defendant's words alone

3

can be a substantial step." *Id.* (quoting *United States v. LaPointe*, 690 F.3d 434, 444 (6th Cir. 2012) (internal quotations omitted)). "Demonstrating a substantial step does not require a physical act[.]" *Id.*

Defendant contends that his taking the money did not constitute a substantial step because he "gave the money right back." (R. 54: Def. Mot. PageID 980). This argument distorts the evidence presented at trial. Defendant attempts to create the illusion that he had a crisis of conscious by illustrating a situation where Marcus Terry gave him $20,000 of purported drug proceeds and Defendant "gave the money right back." The evidence presented at trial, however, completely contradicts this account. As Government's Exhibit 3 showed, when Marcus Terry brought the $20,000 of purported drug money to Defendant at his office, Defendant accepted the money without hesitation, took it from Marcus Terry, and counted it out on his desk. (Gov't Exhibit 3). At no point did Defendant hand *any* of the money back to Marcus Terry or otherwise indicate to Marcus Terry that he was unwilling to launder his money during this meeting. Rather, the evidence, consisting of Defendant's own statements during this meeting, showed just the opposite—that Defendant took $20,000 of purported drug money intending to launder it.

To the extent Defendant contends that his giving the money back to Marcus Terry piecemeal in the weeks after he accepted the money shows his lack of intent to launder the money, such a contention is also misplaced. Rather, viewed in the light most favorable to the government, such actions show that Defendant was doing as Terry asked, not acting of his own contrite volition. These actions show, just as Defendant's own statements during his meetings with Terry showed, that Defendant was serving as Marcus Terry's personal dirty attorney, willing to do whatever necessary to keep his relationship with Terry. Indeed, the government presented evidence showing that as late as April, Defendant agreed to accept *another* $40,000 of

4

purported drug proceeds from Marcus Terry. (Gov't Exhibits 12-16). Accordingly, the jury reasonably concluded that Defendant attempted to launder $20,000 of purported drug money as charged in Count 1.

As to Defendant's second claim for relief, Defendant raises, for the first time in his Motion, an argument challenging the government's evidence regarding interstate commerce. More specifically, Defendant claims that the check that Defendant wrote to M.A.T. & Associates does not satisfy the element of being a transaction affecting interstate commerce. Defendant never raised this argument during trial; nor did Defendant contest this argument to the jury. Nevertheless, the government satisfied its burden of proof on each element of Count 2. This count required the government to prove that Defendant conducted a financial transaction, which, as this Court instructed the jury, has four possible definitions, one of which is, "A transaction which in any way or degree affects interstate or foreign commerce involving one or more monetary instruments." A monetary instrument, as this Court instructed, includes a personal check, like the one Defendant wrote out to M.A.T. & Associates. As to Count 2, the monetary instrument involved was a personal check written from Defendant's U.S. Bank account. The government presented the bank custodian from U.S. Bank, who testified that U.S. Bank is located and operates in several states, establishing that U.S. Bank is engaged in interstate commerce. "The government need only prove that the transaction in question had a de minimis effect upon interstate commerce." *United States v. Ables*, 167 f.3d 1021, 1029 (6th Cir. 1999). Viewed in the light most favorable to the government, the jury could have reasonably concluded that Defendant's personal check, which was written from an account at a bank that deals in interstate commerce satisfied the element that the transaction "in any way or degree" affected interstate commerce.

As for his third claim for relief, Defendant challenges the sufficiency of the evidence as to Count 3 regarding the check he wrote for $2,000 to Marcus Terry. Although Defendant now admits that it is not necessary to show that any of the purported drug money was deposited into a bank account, he claims that there was insufficient evidence that the $2,000 from this check was money that came from Terry. Essentially, Defendant challenges the government's evidence as to the element that the property involved in the financial transaction was represented to be the proceeds of the illegal activity. Defendant's second argument as to Count 3 claims that the government failed to present any evidence that Defendant wrote the check to Terry with intent to conceal. Viewed in the light most favorable to the government, the evidence the government presented at trial as to these elements satisfied the burden of proof.

As this Court instructed the jury, to sustain a conviction for money laundering, the government must prove that the property involved in the transaction was represented to be proceeds of a specified unlawful activity. In this case, the specified unlawful activity was drug trafficking. Although Defendant claims otherwise, the government presented evidence showing that the $2,000 of this check was money that came from Marcus Terry. First, the government presented evidence from Defendant's own recorded statement that this $2,000 check, the "property involved in the transaction," was derived from the $20,000 of purported drug money that Marcus Terry gave Defendant. In the recorded meeting between Defendant and Terry on March 4, 2014, when Defendant gave Marcus Terry this check, Defendant stated, "That's your money and my money . . . . I comingled the funds." (Gov't Exhibit 5). Viewed in the light most favorable to the government, this statement shows that this $2,000 was money derived from the $20,000 that Defendant agreed to clean for Terry. Likewise, this statement contradicts Defendant's claim during trial that he had given back all of the money to Marcus Terry and,

6

therefore, had no money left to launder. By his own words, Defendant still had some of Terry's money in his bank account, and the jury could reasonably conclude from this evidence that the $2,000 check that Defendant gave Marcus Terry on March 4, 2014, was from the purported drug money that he agreed to launder for Terry.

Moreover, Defendant's own statement on the day of his arrest shows that he had not given all the money back to Marcus Terry. The government presented evidence that during his Mirandized interview, Defendant told investigators that he gave Marcus Terry the money back in small increments, and that he had given all of it back except for $2,300. This post-arrest statement is corroborated by the video from the recorded meeting between Defendant and Marcus Terry in which Defendant tells Terry that some of the money is still in Defendant's bank account. (Gov't Exhibit 5).

More importantly, viewed in the light most favorable to the government, the jury could reasonably conclude, based on Defendant's own statement from the recorded meeting on March 4, 2014, and testimony of Defendant's post-arrest interview, that the $2,000 check he wrote to Marcus Terry was from the purported drug money that he agreed to launder for Marcus Terry. The jury could also reach such a conclusion based on the circumstances of the transaction and the relationship between Defendant and Terry. The government presented several recorded conversations between Defendant and Terry in which Defendant agreed, discussed, and planned ways to launder Marcus Terry's purported drug money. The jury was aware, from Defendant's recorded statements, that Defendant agreed to take Terry's purported drug money and then write Terry checks in small amounts to "clean" the money. (Gov't Exhibit 1). Indeed, on March 4, 2014, Defendant issued Terry the $2,000 check. (Gov't Exhibit 5). The jury could reasonably conclude from this evidence alone that the $2,000 check was the execution of Defendant's

articulated money laundering scheme. Indeed, why else would Defendant be writing Marcus Terry a $2,000 check?

Defendant also argues that the government failed to present any evidence that Defendant wrote the $2,000 check to Marcus Terry with the intent to conceal. As this Court instructed the jury, the third element of money laundering is that the defendant had intent to conceal or disguise the nature, location, source, ownership, and control of the proceeds. The government presented evidence at trial that Defendant had the intent to conceal the nature of the proceeds, which Defendant, as he admitted, believed were drug proceeds. More specifically, the recorded meetings between Defendant and Marcus Terry showed Defendant outlining how he would, in his words, "clean" and "launder" Terry's drug money. (*See*, *e.g.*, Gov't Exhibit 1). Defendant's statements in these recordings show his intent to conceal the nature of the proceeds; he intended to clean Terry's purported drug money in an effort to make that money look legitimate. Although in other cases there are difficulties establishing a Defendant's intent based on the circumstances of a financial transaction, there was no such difficulty here because the jury had the benefit of listening to Defendant's own words during these recorded meetings where he explained to Marcus how he intended to clean the money.

Finally, Defendant moves under Rule 33 for a new trial based on his claim that statements of Marcus Terry included in the recorded meetings with Defendant were inadmissible hearsay. Defendant raised this issue in a pretrial motion in limine, which this Court denied. Rule 33 provides that "[u]pon the defendant's motion, [a district] court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Defendant claims that he is entitled to a new trial because the evidence of Marcus Terry's statements presented during trial violated constitutional rights under the Confrontation Clause. The

8

Confrontation Clause prevents the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004). If statements are non-testimonial, and therefore satisfy the Confrontation Clause, the only remaining admissibility question is whether the statements satisfy the Rules of Evidence. *See United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009).

The Sixth Circuit has specifically rejected this argument holding that a cooperating informant, whose statements with the defendant are recorded and presented as evidence, is not a witness against the defendant if the informant does not testify. *United States v. Jackson*, 425 F. App'x 476, 481 (6th Cir. 2011) ("The cooperating source as not a witness against [the defendant] for purposes of the Sixth Amendment because the source did not testify at trial and did not otherwise 'bear testimony' against [the defendant.]"). In *United States v. Jones*, 205 F. App'x 327 (6th Cir. 2006), the Sixth Circuit held "that the admission of recordings involving a C.I. and a defendant did not violate the Confrontation Clause because the portions not involving the C.I. were party admissions and the portions involving the C.I. were offered not for the truth of the matters asserted but to 'give meaning to the admissible responses of [the defendants].'" *Jones*, 205 F. App'x at 342.

Moreover, eight other circuits have also determined, post-*Crawford*, that recordings of a confidential informant's discussions with a defendant are admissible even when the confidential informant does not testify. *See United States v. Cimino*, 2016 U.S. App. LEXIS 1706 (2d Cir. Feb. 2, 2016) ("The admission of recordings that contain the voice of the defendant and a confidential informant does not violate the Confrontation Clause where the informant's statements are used only to provide context to the defendant's statements, and not for the truth of

9

the matter asserted, as such statements are nontestimonial in nature."); *United States v. Foster*, 701 F.3d 1142, 1150 (7th Cir. 2012) ("The admission of recorded conversations between informants and defendants is permissible where an informant's statements provide context for the defendant's own admissions. '[S]tatements providing context for other admissible statements are not hearsay because they are not offered for their truth.'"  (internal quotation marks omitted)); *United States v. Dixon*, 481 Fed. App'x 806, 811 (4th Cir. 2012) ("Whether the statements were testimonial is immaterial, however, because even if they were testimonial, the Confrontation Clause does not bar their admission 'for purposes other than establishing the truth of the matter asserted.'" (quoting *Crawford*, 541 U.S. at 40)); *United States v. Gouveia*, 468 Fed. App'x 793, 796 (9th Cir. 2012) ("[The confidential informant's] statements, which were factually false, are also exempt from the Confrontation Clause because they were not offered for the truth of the matter asserted, but to provide context for [the defendant's] statements."); *United States v. Augustin*, 661 F.3d 1105, 1128 (11th Cir. 2011) ("This Court has explained that the Confrontation Clause is not violated by a non-testifying informant's recorded statements when offered only to place the defendant's statements in context."); *United States v. Detelich*, 351 F. App'x 616, 623 (3d Cir. 2009) ("[The Third Circuit Court of Appeals has] rejected the argument that statements made by an unavailable confidential informant and admitted via recording violated the Confrontation Clause."); *United States v. Santiago*, 566 F.3d 65, 69 (1st Cir. 2009) ("[R]ecordings of what the two informants said were not hearsay offered in violation of the confrontation clause: the statements of the informants were not offered for their truth but as exchanges with Santiago essential to understand the context of Santiago's own recorded statements arranging to 'cook' and supply the crack. These statements (also not generally offered for their truth) comprised admissions by a party and so cannot be hearsay."); *United States v.*

*Rios*, 298 F. App'x 312, 314 (5th Cir. 2008) ("Accordingly, the statements of the confidential informant on the recording and transcript were admitted to provide context to [the defendant's] statements, were not admitted to prove the truth of the matters asserted therein, and did not violate the Confrontation Clause or the hearsay rule.").

Likewise here, Marcus Terry's statements are not testimonial.  More importantly, they were not offered for their truth.  Indeed, Terry's was not a drug dealer and was falsely holding himself out as a drug dealer to Defendant; so his statements to Defendant that he was selling cocaine were not offered for their truth because they were not true.  Rather, these statements were offered to show Defendant's knowledge and intent and, are, therefore, non-hearsay.  Moreover, Terry's statements provided context for Defendant's admissible statements.  Without Terry's statements, the jury would have been left to listen to a recording of a one-sided conversation.

        Respectfully submitted,

        CAROLE S. RENDON
        United States Attorney

By:   /s/ Margaret A. Sweeney
       Margaret A. Sweeney (OH: 0086591)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3990
       (216) 522-7499 (facsimile)
       Margaret.Sweeney@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on this 2nd day of August 2016 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

      /s/ Margaret A. Sweeney
      Margaret A. Sweeney
      Assistant U.S. Attorney