## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO: 1:15CR00381 |
| | : | |
| Plaintiff, | : | JUDGE DONALD C. NUGENT |
| | : | |
| -vs- | : | |
| | : | |
| MATTHEW J. KING, | : | **DEFENDANT MATTHEW J. KING'S** |
| | : | **SENTENCING MEMORANDUM** |
| Defendant. | : | |

  Defendant Matthew J. King, through counsel, respectfully submits the instant Sentencing Memorandum for this Court's consideration at sentencing, scheduled for August 30, 2016. Mr. King requests that the Court impose a sentencing which is "sufficient but not greater than necessary" to achieve the statutory goals of sentencing under Title 18, United States Code §§ 3553(a) and 3661.

        Respectfully submitted,


        *s/ Timothy C. Ivey*
        TIMOTHY C. IVEY (0039246)
        Assistant Federal Public Defender
        1660 West Second Street - Suite 750
        Cleveland, Ohio  44113
        Phone: (216) 522-4856; Fax: (216) 522-4321
        E-Mail: timothy_ivey@fd.org

## MEMORANDUM

**A.   APPLICATION OF 18 U.S.C. § 3553(A) SENTENCING FACTORS**

**1. HISTORY AND CHARACTERISTICS OF MR. KING**

Mr. King was born on December 26, 1970, in Defiance, Ohio.  Both of Mr. King's parents were high school English teachers and coaches.  Due to Mr. King's father's changes of employment, the family moved frequently.  The constant changes of residence caused Mr. King to have to attend several different schools.  This resulted in Mr. King experiencing issues with fitting in with other students and he battled bouts of depression.  Mr. King eventually, became involved with a girlfriend.  Unfortunately, when she broke up with him, Mr. King fell into a deep depression and attempted suicide at age 16.  This would eventually develop into a pattern of depression behavior that would haunt Mr. King throughout his life up to the time of the offense at issue.

Despite Mr. King's emotional problems, he excelled in academics and sports.  Mr. King graduated from high school in 1989, and then attended Michigan State University where he obtained a Bachelor's Degree in Criminal Justice in 1983.   Mr. King was able to graduate on time because he received advanced college credits because of his performance on AP tests in high school.  Following college graduation, Mr. King attended Cleveland Marshall College of Law and graduated with a Juris Doctorate degree in 1996.   Following graduation, Mr. King began a successful career as a prosecutor and assistant law director for the City of Lakewood.  In 1999, Mr. King was hired by the Cuyahoga County Prosecutor's office as an assistant prosecutor.  In approximately 2006, Mr. King went into private practice.  Excluding the instant offense, the Ohio Supreme Court lists no other discipline or sanction history for Mr. King.

In 1995, Mr. King married his first wife, Julie Nelson.  This union produced Mr. King's daughter and only child, Katelyn.  Unfortunately, the marriage became what Mr. King described as unbearable due to his wife's mental health issues and mendacity.  The couple divorced in the year 2000.   Mr. King lost everything in the divorce and was ordered to pay child support that his income could barely cover.  As a result, Mr. King could not afford his own home and was forced to move in with his parents.   Unfortunately, the vicious cycle of Mr. King's past returned and he fell into a grave depression.  Mr. King began to abuse alcohol and was in a total state of despair. During this time, Mr. King also began working with Boyer Communication Group giving instructions on making effective presentations.   Unfortunately, Mr. King's depression and substance abuse impeded his ability to maintain his employment with Boyer.

Between 2005 and 2006, Mr. King received mental health treatment from Dr. Louis Weigel. Mr. King was diagnosed with attention deficit disorder, codependency, alcohol dependency, and depression.  Unfortunately, Mr. King was unable to complete his treatment due to meager financial resources.

Eventually, Mr. King met and married his second wife Caroline Heaney.  Caroline also suffered from alcohol abuse and the couple's marriage became a disaster.   The relationship was replete with financial problems and infidelity on the part of Mr. King's wife.   The couple eventually divorced.  As in the past, Mr. King fell into a deeper depression and his alcohol abuse worsened.

At the time of the commission of the instant offenses, Mr. King was at his lowest point. He was in deep depression.  Mr. King was living out of his office and occasionally staying in a guest room of a man who had had an affair with Mr. King's second wife while he was married to her.  Mr. King's law practice was dwindling and he was dealing with many financial problems.

Mr. King was abusing alcohol on a daily basis.   There was no evidence revealed at trial that Mr. King engaged in any money laundering offenses prior to or after the instant offense.   Mr. King realizes that his deep personal issues are no excuse for his conduct.   However, they clearly contributed his foolish and desperate decision to engage in the instant offense and these acts were clearly an aberration of his normal conduct.

## B.    ACCEPTANCE OF RESPONSIBILITY

Although Mr. King exercised his constitutional right to jury trial in this case he is entitled to consideration by the Court for acceptance of responsibility reductions in his sentencing guidelines calculations.   When Mr. King was apprehended by authorities he readily admitted that he had accepted money from the government's informant to be illegally laundered.   Further, Mr. King testified at trial and during his testimony he made the same admission.   Mr. King's defense was predicated on the fact that Mr. King had not completed all the steps necessary to constitute the charged offenses.    The commentary of U.S.S.G. § 3E1.1 indicates that the following are appropriate considerations for the Court in determining whether a defendant qualifies for an acceptance of responsibility reductions:

> (B)  voluntary termination or withdrawal from criminal conduct or association;
> (C)  voluntary surrender to authorities promptly after commission of the offense;
> (D)  voluntary assistance to authorities in the recovery of the fruits or instrumentalities of the offense.

The evidence at trial indicated that Mr. King promised the government informant that he would launder the proceeds by depositing the funds in his IOLTA account and set up an entertainment corporation to launder the funds through.   Mr. King testified that he realized his conduct was wrong and never intended to launder the money after receiving it.

The government agents testified that they set the informant up to convince Mr. King that the informant was a major and dangerous drug dealer.   Mr. King claims that he never intended to

4

launder the money is supported by his voluntary withdrawal from criminal conduct by never depositing the proceeds in his account, never completing the corporate paperwork and Secretary of State filings, and returning the majority of the proceeds he received from the informant. Further, when it became clear that the informant had become "rogue" and took the proceeds for himself, Mr. King voluntarily suggested and participated in a sting operation to assist the government to bring the informant to justice.

### C.   COLLATERAL CONSEQUENCES WILL SERVE THE NEEDS OF PUNISHMENT AND DETERENCE

Mr. King is 45 years old and practically his entire professional life has been devoted to the practice of law.  As a result of Mr. King's convictions in this case, the Supreme Court suspended Mr. King's law license as of July 18, 2016.  Because Mr. King has been convicted of three federal felonies, he is likely to suffer permanent disbarment.  Further, Mr. King's reputation and character have been irreparably shattered.  These are undoubtedly, the most severe punishment that can be leveled on an attorney and the type that has the greatest impact in terms of deterrence. Additionally, Mr. King faces other invisible punishments including loss of employment options, occupational restrictions, exclusion from public housing, loss of civil liberties, financial loss, exclusion from federal and state benefit programs, in addition to significant strains on family ties.  Mr. King's relationship with his daughter has been severely damaged by his convictions. Such collateral consequences may be part of this Court's consideration under §3553(a).  Gall v. United States, 552 US 38 (2007).

### D.  **MR. KING HAS AN EXTREMELY LOW RISK OF RECIDIVIS**M

Mr. King is 45 years old and has a criminal history score of zero.  His offense was not an act of violence.  These facts, along with the recidivism findings of the United States Sentencing

Commission and case law, support the conclusion that Mr. King is incredibly unlikely to recidivate and poses little risk of harm to the public in the future.

Mr. King's criminal history score is zero, which substantially reduces his risk of recidivism. The United States Sentencing Commission recognizes that not all criminal history category I cases fare the same, as first time offenders with a criminal history score of zero are distinct from other category I offenders. *See Recidivism and the First Offend*er (May 2004), pp. 4-5, available online at http.:www.ussc.gov/research-and-publications/research-publications/2004recidivism-and firstoffenders (last visited June 29, 2016).

In evaluating first time offenders, the Sentencing Commission found that defendants with a criminal history score of zero and no prior arrests or convictions have the lowest possible rate of recidivism at 6.8%. ID at 14. Even more telling, such defendants have a recidivism rate that is "substantially lower that the recidivism rate for offenders with only one criminal point (22.6%)…" *Recidivism and the First Time Offender* at 13. Put another way, a defendant with even one criminal history point is more than three times likely to reoffend as Mr. King.

**E.  CONCLUSION**

For the reasons stated above, Mr. King respectfully requests the Court consider the factors highlighted within and at the sentencing hearing in support of a sentence that is sufficient but not greater than necessary to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a).

Respectfully submitted,

*s/ Timothy C. Ivey*
TIMOTHY C. IVEY
Assistant Federal Public Defender
1660 West Second Street - Suite 750
Cleveland, Ohio  44113
Phone: (216) 522-4856; Fax: (216) 522-4321
E-Mail: timothy_ivey@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2016, a copy of the foregoing Sentencing Memorandum was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

*s/ Timothy C. Ivey*
TIMOTHY C. IVEY
Assistant Federal Public Defender